UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER WENGOROVIUS, #285619,

        Plaintiff,        Case No. 12-cv-13053
                                   Honorable David M. Lawson
v.                              Magistrate Judge David R. Grand

CORIZON CORP., *et al.*,

        Defendants.
_____/

**<u>REPORT AND RECOMMENDATION TO</u>**
**<u>GRANT DEFENDANTS' MOTION TO DISMISS [25]</u>**

Before the court is Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [25]. An order of reference for general case management [9] was entered on July 27, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b).

Generally, the court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment [25] be **GRANTED**.

**II.    REPORT**

    **A.    Factual Background**

        *1.    The Parties*

Plaintiff Walter Wengorovius ("Plaintiff") is currently incarcerated by the Michigan Department of Corrections ("MDOC"). Plaintiff is presently housed at the Charles Egeler

1

Reception & Guidance Center in Jackson, Michigan, but the conduct about which he complains took place at the Robert G. Cotton Correctional Facility and the Duane Waters Hospital. On July 11, 2012, Plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983, alleging violations of his rights under the Eighth Amendment of the United States Constitution. The named Defendants include Corizon Health, Inc. ("Corizon"), a private entity retained by the State of Michigan to provide medical services to prison inmates, as well as three Corizon employees, Dr. Zivit Cohen, Dr. Tyra McKinney, and Matthew Payne, PA.

### 2. *Plaintiff's Complaint*

In his complaint, Plaintiff alleges that he is hearing impaired and that he made unspecified requests to Dr. Cohen, Dr. McKinney, and PA Payne about his hearing aid "with no results." (Doc. #1 at 2). Plaintiff asserts that, because his hearing aid did not work properly, he missed call outs for medical appointments and "chow hall," and he speculates that his inability to hear caused him to receive a continuance from the Parole Board. (*Id.*). Plaintiff's complaint does not, however, contain any allegations with respect to specific encounters, meetings, or conversations with any of the individual Defendants regarding his hearing aid.

Plaintiff also alleges in his complain that, more than twenty years ago, he was prescribed Prilosec by a "Specialist Stomach Surgeon," and took that medication for years. (*Id.* at 3). According to Plaintiff, Dr. Cohen performed x-rays of his stomach, advised him that his upper stomach valve was defective, and told him that he needed to remain on Prilosec. (*Id.*). Plaintiff then vaguely alleges that "the defendants took [the Prilosec] away several times," although the complaint contains no specifics as to which of the individual Defendants purportedly discontinued this medication, when, or why. (*Id.*).

Plaintiff makes no allegations against Corizon. Indeed, Corizon is merely identified as a

"health care provider" in the introductory portion of Plaintiff's complaint. (*Id.* at 2). Then, in the "Relief" section of his complaint, Plaintiff asks for an order requiring Corizon to provide him with the proper hearing aid and medication, as well as punitive and compensatory damages in the amount of "25 Million Dollars." (*Id.* at 3).

On November 14, 2012, Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. #25). Plaintiff filed a response to this motion on November 29, 2012 (Doc. #26), and Defendants filed a reply on December 13, 2012 (Doc. #28).

### 3. *The Medical Records Attached to Plaintiff's Complaint*

Attached to Plaintiff's three-page complaint are thirty-seven pages of mostly medical records, health care requests ("kites"), and kite responses. (Doc. #1-1 at 1-37). These documents relate to medical care that Plaintiff sought and obtained between 2004 and 2012. The court will discuss relevant portions[1] of these documents in chronological order, by ailment.

#### a. *Plaintiff's Hearing Aid*

On September 23, 2011, Plaintiff sent out a kite asking for immediate action in "getting a working hearing aid." (*Id.* at 26). A written response to this kite indicates that Plaintiff was seen on September 25, 2011, and was approved for hearing aid repair by Corizon on September 26, 2011. (*Id.* at 10).

On December 1, 2011, Plaintiff again sent out a kite, asking Dr. McKinney, specifically, what progress had been made on getting him a "working hearing aid." (*Id.* at 27). The response to this kite indicates that Plaintiff was placed on the "MSP list," meaning that he had been placed on a list to see a medical service provider. (*Id.*). Just a few weeks later, on December 17, 2011, Plaintiff sent out another kite, asking Dr. McKinney to "please see [him] on this hearing aid

---

[1] As stated above, some of the records attached to Plaintiff's complaint date back as far as 2004, and include no reference to the named defendants.

subject." (*Id.* at 28). Again, the response to this kite indicates that Plaintiff was placed on the "doctor call out list." (*Id.*). By letter dated January 26, 2012, Plaintiff reiterated his complaints about problems with his hearing aids, saying that the hearing aid company was not properly correcting the problem and that Dr. McKinney was the "ONLY person to listen to [him]..." (*Id.* at 7).

Several months later, on June 7, 2012, Plaintiff sent out another kite, complaining that his hearing aid was broken again. (*Id.* at 31). In that kite, Plaintiff stated that his hearing aid had "worked great since April 26, 2012 after Jackson Hearing Clinic removed moisture . . . ." and indicated that he believed moisture was a problem again. (*Id.*). The next day, Plaintiff received a response to his kite, indicating that a nurse visit had been scheduled. (*Id.* at 37). That same day, June 8, 2012, Plaintiff sent out another kite, reiterating the problems he was having with his hearing aid, and asking that the Jackson Hearing Clinic be contacted to determine the price of a "hearing aid moisture removal kit." (*Id.* at 33). A June 9, 2012 response to this kite indicates that Plaintiff had spoken with a nurse about his hearing aid, and that his request for price information was being forwarded to a supervisor for review. (*Id.* at 34).

### b. *Plaintiff's Medication*

On June 19, 2011 and June 23, 2011, Plaintiff sent letters to Dr. McKinney asking to be put back on Prilosec, saying that he was suffering from heartburn, diarrhea, and vomiting since being taken off that medication (on some unspecified date). (*Id.* at 8, 9). There is no indication in the record that Plaintiff received written responses to these letters.

On February 24, 2012, Plaintiff sent out a kite complaining about "serious upper stomach reflux disease" and again asking to be put back on Prilosec. (*Id.* at 29). The next day, Plaintiff received a response to his kite, indicating that he had been placed on the MSP list for February

4

27, 2012, and advising him that if the issue was not resolved at that time, he should speak with the MSP at his next monthly follow-up. (*Id.* at 30).

On June 7, 2012, Plaintiff sent out another kite asking for Prevacid for his reflux disease, saying that Zantac was not strong enough. (*Id.* at 32). The next day, Plaintiff received a kite response, indicating that a nurse visit had been scheduled regarding this complaint. (*Id.* at 37).

### c. Other Medical Issues

On August 26, 2010, medical notes indicate that Plaintiff had undergone an ultrasound, which showed a "complex cystic lesion on the right kidney measuring 3.6 cm." (*Id.* at 3). Radiology recommended a CT scan to further characterize the lesion. (*Id.*). On October 10, 2010, Plaintiff sent out a kite requesting a visit with Dr. Cohen in follow-up to this hospital visit. (*Id.* at 1). Records of a kidney ultrasound performed on March 7, 2011, indicate that Plaintiff had a mass on his right kidney measuring 4.3 cm. (*Id.* at 4-5). The records indicate that this mass "may represent complex cyst, however neoplastic process, benign or malignant, cannot be excluded by ultrasound. This could be further characterized with MRI." (*Id.* at 1). On August 22, 2011, Plaintiff sent a kite to Dr. McKinney questioning what had happened with respect to a follow-up visit at Allegiance Health that apparently had been scheduled to take place during the week of July 4, 2011. (*Id.* at 2). This visit purportedly was for the purpose of checking the "mass" on his right kidney to determine whether it was benign or malignant. A notation on the kite indicated that Plaintiff had been "placed on MSP [medical service provider] list." (*Id.*).

### 4. The Grievance Records Attached to Plaintiff's Complaint

Plaintiff also attached to his complaint two grievances: one filed on June 19, 2008, in which he challenged the fact that he had not received new hearing aids; and the second filed on January 26, 2009, in which he grieved the fact that he had not received a new "right ear mold"

5

and preventative maintenance cleaning and repair of his hearing aid.[2]  (*Id.* at 11, 12).  Plaintiff did not attach any documentation regarding an appeal of either grievance.

      **B.**      **Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with

---

[2] Plaintiff's complaint also attaches a document in which his January 26, 2009 grievance was denied because the issue was resolved.  (*Id.* at 13).  Apparently, Plaintiff had stated that "his hearing aid problem [was] being taken care of currently," and he had an appointment scheduled with the audiology clinic on January 29, 2009.  (*Id.*).

basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (internal quotations omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a court is presented with a Rule 12(b)(6) motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir.2004), and their "complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558, *quoting Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*., *quoting Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560, *citing Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004).

**C. Analysis**

In their motion, Defendants argue that Plaintiff's complaint should be dismissed because he failed to exhaust his administrative remedies. Defendants further argue that, even if Plaintiff

had properly exhausted his claims, dismissal is appropriate because Plaintiff failed to state a claim for deliberate indifference against either Corizon or the individual Defendants. Each of these arguments will be addressed in turn.

### 1. *Plaintiff Failed to Exhaust His Claims*

Defendants first argue that Plaintiff's complaint should be dismissed[3] because he failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). (Doc. #25 at 15).

Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge his or her conditions of confinement until he has exhausted all available administrative remedies. 42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is as an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009).

In determining whether the plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy

---

[3] Because Defendants' exhaustion argument is based on factual assertions not contained in Plaintiff's complaint, the court will address it under the summary judgment standard. *Flentall v. Lange*, 2011 WL 4526742, at *6 (W.D. Mich. Aug. 8, 2011).

9

Directive 03.02.130 ("Prisoner/Parolee Grievances"). (Doc. #25 at Ex. A, Att. 1 (the "Policy," effective July 9, 2007)). State prisoners must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process – before the challenged conduct can be brought as a lawsuit. (*Id.* at ¶B). If a prisoner cannot informally resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶P, V). "Information provided [in the Step I grievance] shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶R). If the prisoner is dissatisfied with the Step I response, he may submit a Grievance Appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response was received, within ten days of the date the response was due. (*Id*. at ¶BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶FF).

Here, Plaintiff attached to his complaint two grievances – one filed on June 19, 2008 (in which Plaintiff challenged the fact that he had not received new hearing aids), and a second filed on January 26, 2009 (in which Plaintiff grieved the fact that he had not received a new "right ear mold" and preventative maintenance cleaning and repair of his hearing aid.) (Doc. #1-1 at 11, 12). Both of these grievances were Step I grievances, and, although Plaintiff was not required to plead exhaustion in his complaint, *Jones*, 549 U.S. at 216, the court notes that there is no indication in the record that he in fact appealed the denial of these grievances (assuming they were, in fact, denied) to Steps II or III. Nor is there an indication in the record that Plaintiff ever filed grievances related to the denial of his stomach medication or the treatment he received with respect to the mass on his kidney.

10

In support of their motion, Defendants submitted the affidavit of Richard Russell, Manager of MDOC's Grievance Section. (Doc. #25 at Ex. A). In his affidavit, Mr. Russell specifically attested that he performed a search of the MDOC Step III grievance appeals database and located no grievances filed by Plaintiff at Step III. (*Id.* at ¶12). Thus, Defendants' evidence appears to establish that Plaintiff did not appeal either of the two grievances he filed regarding his hearing aid – or any other grievance, for that matter – to Step III, as required to satisfy the Policy's exhaustion requirements. Under the summary judgment standards articulated above, Plaintiff was required to present affirmative contrary evidence establishing the existence of a material question of fact on the exhaustion issue. *Wrench.,* 256 F.3d at 453; *Alexander*, 576 F.3d at 558. In other words, Plaintiff needed to present at least some proper evidence that he had, in fact, filed and appealed the relevant grievances through all three steps of the Policy's grievance process. *Alexander*, 576 F.3d at 558.

In his response to Defendants' motion, Plaintiff presents no evidence that he did so. Instead, Plaintiff merely asserts that, on May 5, 2008, he "wrote a grievance on the medical staff which Defendant Dr. Zivit Cohen is in charge of about not providing him a working hearing aid . . . . So Defendants' claim that Plaintiff did not use the state's remedies is not true." (Doc. #26 at 2). Plaintiff's assertions are immaterial to the exhaustion question because, at most, they show that he filed an additional Step I grievance regarding his hearing aid. Again, he presented no evidence that he *exhausted* that, or any other grievance, as required by the PLRA.

Because Plaintiff failed to respond to Defendants' well-supported motion with evidence that he satisfied the Policy's exhaustion requirements, no material question of fact exists on the issue, and Defendants are entitled to summary judgment. *See King v. Bell*, 2009 WL 4646079, at *3 (E.D. Mich. Dec. 7, 2009) (summary judgment granted for failure to exhaust remedies when

MDOC grievance database showed no Step III filing had been made and plaintiff provided no evidence to rebut that showing).

### 2. Even if Plaintiff Had Satisfied the PLRA's Exhaustion Requirements, His Complaint Fails To State a Claim Upon Which Relief Can Be Granted

Defendants further argue that, even if Plaintiff had properly exhausted his claims, dismissal is appropriate because Plaintiff failed to state a claim for deliberate indifference against either Corizon or the individual Defendants.

The Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). An Eighth Amendment claim has two components, one objective and one subjective. To meet the objective prong, a plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the subjective prong, a plaintiff must demonstrate that the defendant acted with deliberate indifference. *See Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010). More specifically, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer*, 511 U.S. at 837.

As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

12

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id.* (internal citations omitted).

### a. The Individual Defendants

As Defendants correctly point out, Plaintiff's complaint makes only vague and conclusory allegations that the individual Defendants denied him medical care in violation of the Eighth Amendment, and he fails to identify any specific actions or encounters with the individual Defendants that form the basis for his deliberate indifference claim.[4]  (Doc. #1). The United States Supreme Court demands that Plaintiff identify how each Defendant, though his or her "own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has

---

[4] For example, Plaintiff says only that on "numerous occasions" he made requests to the individual defendants about his hearing aid "with no results." (Doc. #1 at 2). He does not allege when or to whom such requests were made, or what was said in response. Likewise, with respect to his stomach medication, he merely vaguely asserts that "the defendants took it away several times." (*Id.* at 3). He includes no allegations regarding who "took away" the medication, when, or why. Also, at least a substantial portion of Plaintiff's claim against Dr. Cohen appears to be based on his allegation that she is "in charge of" certain medical staff (Doc. #26 at 2) not that she took any particular action herself in deliberate indifference to Plaintiff's medical needs. *Cf.* Doc. #1 at 3 (alleging that Dr. Cohen performed x-rays and evaluated Plaintiff's stomach, which conduct Plaintiff does not seem to be challenging). However, "a § 1983 claim may not be based on respondeat superior liability; instead, the 'supervisory official at least [must have] implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011) (quoting *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1985)). "A 'mere failure to act' is not enough; 'the superviso[r] must have actively engaged in unconstitutional behavior'" if he or she is to be held liable. *Id.* (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)); *see also Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (a plaintiff's "mere claim" that defendants were aware of the alleged misconduct, but did not then take appropriate action, is insufficient to impose liability on supervisory personnel under § 1983). Thus, to the extent Plaintiff's claim against Dr. Cohen is based on her being "in charge of" other medical care providers, that claim should be dismissed.

13

failed to do so, and for this reason alone, his complaint fails to state a claim.

Moreover, the records attached to Plaintiff's complaint, as well as the factual allegations made by Plaintiff in his reply brief, demonstrate that the individual Defendants simply were not deliberately indifferent to a serious medical need. For example, with respect to his hearing aid, the medical records indicate that Plaintiff's complaints were not ignored. He was approved for hearing aid repair in September 2011; was placed on a medical call-out list after he again raised the issue in December 2011; and spoke to a nurse regarding his hearing aid in June 2012. (Doc. #1-1 at 10, 27-28, 34). By Plaintiff's own admission, when he spoke with Dr. Cohen about his hearing aid in December 2009, she reported that she "was working on it." (Doc. #26 at 2). He further acknowledges that, in September 2011, he spoke with Dr. McKinney[5] about his hearing aid, and she indicated she was "waiting for approval from Corizon Health." (*Id.* at 3). And, when Plaintiff spoke with PA Payne about his hearing aid in June and July 2012, PA Payne indicated that he had "passed the information on to his supervisor at Corizon Health." (*Id.*).

The same is true with respect to Plaintiff's allegations regarding his stomach medication: he admits in his reply brief that he was provided Zantac; he simply believes that Prilosec was more effective in treating his stomach condition. (*Id.* at 4).

Thus, by Plaintiff's own admissions, as well as the evidence contained in the medical records attached to Plaintiff's complaint, the individual Defendants did not ignore Plaintiff's concerns; rather, they took action to address his issues (albeit perhaps not as quickly or in the exact fashion that Plaintiff would have liked). As this court has recognized, "In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made

---

[5] Indeed, Plaintiff indicated in January 2012 that Dr. McKinney was the "ONLY person to listen to [him]" and expressed his belief that it was the hearing aid company which was not properly correcting his problem. (Doc. #1-1 at 7).

14

by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted). *See also Umbarger v. Corr. Med. Servs.*, 93 Fed. Appx. 734, 736 (6th Cir. 2004) (holding that a difference of opinion or disagreement between a prisoner and prison medical staff over the kinds of treatment the prisoner needs do not rise to the level of deliberate indifference).

Here, where the allegations contained in Plaintiff's complaint and reply brief establish that his concerns about his hearing aid were repeatedly addressed, and where the medical records attached to Plaintiff's complaint demonstrate that he received treatment and medication for his stomach condition, Plaintiff simply cannot succeed on a deliberate indifference claim against the individual Defendants.

### b. Corizon

A private entity employed by the state to provide medical services to prison inmates (such as Corizon) may be sued under §1983 for constitutional violations. *See West v. Atkins*, 487 U.S. 42, 54 (1988). However, just as an individual supervisor cannot be held vicariously liable for the acts of his subordinates, *supra* fn. 4, nor may entities be held vicariously liable for the constitutional violations of its agents on the basis of *respondeat superior*. *See Jones v. Prison Health Servs.*, 2011 WL 7630364, at *2 (E.D. Mich. Dec. 14, 2011) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978)). Rather, in order for this court to find Corizon liable for a constitutional violation under §1983, Plaintiff must show that Corizon took a "deliberate action" that "caused a deprivation of federal rights." *Jones*, 2011 WL 7630364, at *2. Indeed, pursuant to *Monell*, Plaintiff must establish that Corizon had a policy, custom, or practice that resulted in the deprivation of his constitutional rights. *Id.*

Here, Plaintiff has not pointed to any policy, practice, or procedure of Corizon that

15

purportedly deprived him of a constitutional right.  Indeed, Plaintiff merely identified Corizon as a defendant in the introductory portion of his complaint (Doc. #1 at 2) and advanced no specific allegations of wrongdoing by that entity.  The only other reference to Corizon is contained in a medical record attached to Plaintiff's complaint, dated September 27, 2011, in which it is noted that Corizon *approved* repairs to Plaintiff's hearing aid.  (Doc. #1-1 at 10).  Thus, the evidence submitted by Plaintiff actually undercuts any suggestion that Corizon had in place a policy or practice to deny him medical care.[6]

Moreover, even if Plaintiff had identified an improper policy – which he has not – he must also establish an actual violation of his constitutional rights.  *See Floyd v. City of Detroit*, 518 F.3d 398, 411 (6th Cir. 2008) ("Where a court determines that no violation of the plaintiff's constitutional rights occurred, obviously the governmental entity cannot be held liable for its failure to train or for developing a custom that led to a constitutional violation.").  As fully set forth above, despite the fact that Plaintiff might have disagreed with the treatment provided by his medical providers, his disagreement does not amount to a constitutional violation.  *See Westlake*, 537 F.2d at 860 n. 5.  As such, Plaintiff has failed to state a claim against Corizon.

### III.     CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment [25] be **GRANTED**.

Dated: January 16, 2013                                   s/ David R. Grand
                                                          DAVID R. GRAND
                                                          UNITED STATES MAGISTRATE JUDGE

---

[6] In his reply brief, Plaintiff speculates that Corizon changed his stomach medication from Prilosec to Zantac in an effort "to save money." (Doc. #26 at 4).  Such speculation does not state a claim for relief.  *See, e.g., Casanova v. Michigan Dept. of Corrs.*, 2011 WL 4374457, at *3 (E.D. Mich. Sept. 20, 2011) ("the naked assertion that [a defendant] considered cost in treating [a plaintiff's] condition does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care . . .") (internal quotations omitted).

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 16, 2013.

                                              s/Felicia M. Moses
                                              FELICIA M. MOSES
                                              Case Manager